UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ADVANCE LOGISTICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:09-CV-71 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| SCOTT D. HAYNES; ) | |
| THE BIMMEL GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

Defendants Scott D. Haynes ("Haynes") and The Bimmel Group ("Bimmel") (collectively, "Defendants") move to stay this case and compel arbitration (Court File No. 4). Plaintiff Advance Logistics opposes the motion. For the following reasons, the Court **DENIES** the motion (Court File No. 5) and will set this case for a trial on the validity of the purported arbitration agreement.

**I.  RELEVANT FACTS**

For the purposes of this motion, the Court accepts as true the facts in Plaintiff's complaint (Court File No. 1 attach. 1) and the affidavit (Court File No. 12) of Plaintiff's vice-president Tim Harden ("Harden"). Defendants have not submitted any alternative facts or evidence.

Plaintiff is a corporation engaged in trucking and transporting goods. Defendant Bimmel is a corporation, whose chief financial officer and secretary is Defendant Haynes. Starting in 2006, Defendants contacted Plaintiff and allegedly represented they had an affiliation and relationship with Coca-Cola Enterprises ("Coke") that would allow Plaintiff to be the primary transportation carrier for Coke in the southeast. Defendants undertook a course of action to gain Plaintiff's confidences

and create a trustful relationship.

Defendants told Plaintiff it would be one of Coke's primary transportation carriers and Coke required Plaintiff to pay $25 per transportation load to Defendants. Because Plaintiff believed Defendants' representations to be true, Plaintiff orally agreed with Defendants to transport Coke's product on a trial basis to determine if the transportation would realize a profit.

The pending motion concerns a contract signed on July 20, 2006. On that day Haynes appeared at Plaintiff's business to take Harden to a previously-scheduled lunch. Plaintiff contends that as Harden's attention was focused on telephone conversations with customers and drivers, and just as Harden and Haynes were about to leave for lunch, Haynes presented Harden with a one-page document. Haynes allegedly represented that the document was an agreement memorializing the parties' oral agreement and reassured Harden that Plaintiff could cease using Defendants' services if Plaintiff determined the business relationship was not profitable. Haynes did not go over the terms of the document, and Harden signed the document without reading it based on Defendants' representations and the trustful relationship Harden believed to exist. After the one-page document was signed, Haynes took it and did not leave Plaintiff a copy.

Plaintiff began transporting products for Coke and paying Defendants $25 per load. But Defendants started unilaterally making pricing changes, which caused Plaintiff to not make a profit. Plaintiff notified Defendants in January 2008 that it was not making a profit and would stop transporting for Coke unless other financial considerations were made. Defendants agreed to waive their $25 fee and instead receive 3% of Plaintiff's gross revenue from its Coke business. The parties agreed this relationship would last for one year. Defendants did not mention the existence of any written agreement during this meeting.

2

In April 2008, Coke's transportation manager for the southeast called Haynes and Harden to a meeting at which Plaintiff learned for the first time that Defendants were not authorized to represent Coke, bind Coke, or act on Coke's behalf and Plaintiffs were not required to use Defendants' services or pay Defendants a fee to obtain Coke's business. At the conclusion of this meeting, Plaintiff, Defendants, and Coke reached an agreement regarding transportation services but it fell apart in June 2008, and Coke and Plaintiff severed their relationship with Defendants.

Defendants apparently initiated arbitration proceedings in Atlanta, Georgia based on an arbitration provision purportedly incorporated in the one-page agreement. Plaintiff filed this case in the Bradley County, Tennessee, Circuit Court, and it was removed to this court.

Plaintiff contends the one-page agreement Harden signed has been altered to include several pages not attached when signed by Harden. The one-page agreement states it "is subject to the General Conditions set forth on the attached Exhibit 'A.'" Following that is a document labeled "EXHIBIT A," on the top line, and "General Conditions" on the next line. One of the conditions mandates arbitration:

> "8.2 Arbitration. Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be resolved by arbitration in Atlanta, Georgia substantially in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Judgment upon any arbitration award may be entered in any court having jurisdiction, the parties hereby consenting to the jurisdiction of such courts for this purpose. Each party shall be entitled, under the supervision of the Arbitrator, to the amount of pre-arbitration discovery deemed reasonable by the Arbitrator. The discovery period shall not exceed sixty (60) days."

The one-page document also references "Exhibit 'B' ('Commissions')," which sets the rate of commissions Plaintiff must pay to Bimmel. A document labeled "Exhibit B" and "Commission Schedule" sets the rate of commissions at $25 per load.

3

## II.     DISCUSSION

Defendants move to stay this case and for an order compelling arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  The FAA "provides that a written agreement to arbitrate disputes arising out of a contract involving interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting 9 U.S.C. § 2). This section of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  *Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

"While the courts must respect the liberal federal policy favoring arbitration agreements, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Seawright*, 507 F.3d at 972 (internal citation omitted). "Thus, the underlying question of whether the parties agreed to arbitrate is to be 'decided by the court, not the arbitrator.'" *Id.* (quoting *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)).  The enforceability of arbitration agreements is determined based on the applicable state law of contract formation, while arguments based on the applicability of the FAA are evaluated in accordance with federal law.  *Seawright*, 507 F.3d at 972; *see also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005).

"[W]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Cos.*, 288 F.3d at 889 (citing 9 U.S.C. § 4).  "If the district court is satisfied that the agreement to arbitrate is

4

not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Id.* "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Id.* Because this showing mirrors that required to withstand summary judgment, the Court views all facts and inferences in the light most favorable to the party opposing arbitration, and determines whether a reasonable finder of fact could conclude there is not a valid agreement to arbitrate. *Id.*

Defendants contend Plaintiff should be compelled to arbitrate because of the unambiguous arbitration provision contained in the agreement's General Conditions. They argue Plaintiff's allegations of fraud involving the contract itself do not invalidate the arbitration provision. Plaintiff concedes this point, as it must. *Buckeye Check Cashing*, 546 U.S. at 445-46; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). But Plaintiff argues it never agreed to the arbitration provision because the one-page agreement contained no attachments. In response, Defendants assert Plaintiff should not be permitted to claim he did not read the agreement or its attachments. Defendants argue the parties are bound by the contract, including the arbitration provision.

Plaintiff is bound by the one-page agreement Harden signed even though he did not read it. "To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950); *accord De Ford v. National Life & Acci. Ins. Co.*, 185 S.W.2d 617, 621 (Tenn. 1945). *Beasley* and *De Ford* both reference an exception for fraud, and

5

Plaintiff essentially relies on that exception by contending that Haynes told Harden the contract memorialized their oral agreement. That statement would be a misrepresentation because, in fact, the contract contained other provisions beyond those contained in the oral agreement. But one of the elements of fraud is reasonable reliance upon a misrepresentation. *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001). It is not reasonable for a business person like Harden to not read a one-page contract merely because another business person told him it memorializes their oral agreement. *Bowman v. Waggoner*, 2006 WL 140377, *4 (Tenn. Ct. App. Jan. 17, 2006) ("Generally, a party having the ability and opportunity to inform himself of the contents of a writing before he executes the writing is not justified in relying upon representations where the means of knowledge are readily available to that party."). Therefore, Plaintiff is bound by the one-page contract.

The one-page agreement states it "is subject to the General Conditions set forth on the attached Exhibit 'A.'" Plaintiff, however, asserts no documents were attached to the one-page agreement. An arbitration requirement can be contained in a document incorporated into a contract. *See Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984). If the one-page agreement incorporated Exhibit A, then Plaintiff is bound by the arbitration provision contained in the incorporated document even if Plaintiff never read the incorporated document. *T. R. Mills Contrs., Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 870 (Tenn. Ct. App. 2002). But it must be clear what document is incorporated. *See Robert J. Denley Co. v. Neal Smith Constr. Co.*, 2007 WL 1153121, 2007 Tenn. App. LEXIS 229 at *17 (Tenn. Ct. App. Apr. 19, 2007); *T. R. Mills Contrs.*, 93 S.W.3d at 871; *Springfield Tobacco Redryers Corp. v. Springfield*, 293 S.W.2d 189, 197 (Tenn. Ct. App. 1956) (explaining that incorporation requires a "sufficient connection" between papers,

which can be established by physical attachment at the time of signature or by reference); *see also Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 n.10 (3d Cir. 2003) (noting that at common law, a party is not bound by the terms of a document incorporated into a written instrument unless the document is "identified beyond all reasonable doubt" or "clearly identified"); 11 Richard A. Lord, *Williston on Contracts* § 30.25 (4th ed. 1999) ("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties, and including a separate document which is unsigned.").

In both *Robert J. Denley Co.* and *T. R. Mills Contrs.*, the incorporated document was a clearly identifiable and standard document containing general conditions for construction contracts. The party opposing arbitration in *T. R. Mills Contrs.* claimed its managing partner had never read the incorporated document. But, as already noted, not reading a contract does not allow one to disavow its terms. *T. R. Mills Contrs.*, 93. S.W.3d at 871.

Unlike the standard document in *Robert J. Denley Co.* and *T. R. Mills Contrs.*, the general conditions document in this case is not a standard industry document. It is merely a group of papers that state "Exhibit 'A'" and "General Conditions" at the top of the first page. While those terms match the words on the one-page agreement, it is not at all clear that the attached document is the one incorporated into the one-page agreement. Accepting Plaintiff's account as true, there was no document attached to the one-page agreement. Thus, the one-page agreement would need to clearly reference the document to be incorporated. *See Springfield Tobacco Redryers Corp.*, 293 S.W.2d at 197. Defendants introduced no evidence the document labeled "Exhibit 'A'" is the one referenced

7

in the one-page agreement. And Plaintiff asserts there was no attachment. Thus, there is a question of fact about what document, if any, was incorporated into the contact.

In support of their argument that the document labeled Exhibit A is incorporated, Defendants note Plaintiff began making payments in exact accord with the provisions of Exhibit B of the agreement. But the proper incorporation of one document does not lead to the conclusion another document was incorporated. Moreover, Exhibit B sets Bimmel's commission at $25 per load, which accurately memorializes the parties' oral agreement. That Plaintiff paid commissions in accordance with Exhibit B is also entirely consistent with its version of events.

### III. CONCLUSION

Because the Court concludes the validity of the arbitration agreement is in issue, the Court must proceed summarily to trial of that issue. 9 U.S.C. § 4. The Court will allow limited discovery on the factual question here: what document or documents, if any, are incorporated into the one-page agreement signed by Haynes and Harden. It may be necessary for Defendants to answer Plaintiff's allegations on this issue. The Court will set a **discovery deadline of June 19, 2009** for the limited discovery necessary to this motion, and will set a **bench trial**[1] **for June 29, 2009 at 9:00 a.m.** on this issue.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] No party has made a jury demand.